## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SARABETH RODRIGUEZ,             **:**

                          **:**

      v.                  **:**

                          **:**   Civil Action No. CCB-06-1045

CARLOS M. GUTIERREZ, as Secretary,   **:**

U.S. Department of Commerce        **:**

...o0o...

### MEMORANDUM

Sarabeth Rodriguez ("Rodriguez") filed this suit, *pro se*, against Carlos Gutierrez as

Secretary of the U.S. Department of Commerce on April 24, 2006 alleging discrimination based

on race and national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e,

*et seq*.  The defendant filed a motion to dismiss or, in the alternative, for summary judgment.

Thereafter, Rodriguez moved for leave to file a sur-reply and also moved the court to file an

amended complaint.  This matter has been fully briefed and no hearing is necessary.  *See* Local

Rule 105.6.  For the reasons stated below, plaintiff's motion to amend will be denied and

defendant's motion for summary judgment will be granted.

### BACKGROUND

Plaintiff Sarabeth Rodriguez, a woman of Hispanic origin, began her career at the U.S.

Census Bureau in 1988.  Over the course of the next ten years, Rodriguez performed various

tasks at the Census Bureau before becoming Maxine Anderson-Brown's assistant in the

Conference Travel and Management Services Branch ("CTMSB") of the Bureau in 1998.

(Def.'s Mem. at Ex. 9, Rodriguez Statement at 2, 10.)  On her first day at CTMSB, Anderson-

Brown told Rodriguez that she would have selected another woman over Rodriguez, but that the

other applicant did not have enough experience to be hired.  (*Id.* at 10.)  Within her first year at

1

CTMSB, Rodriguez alleges that Anderson-Brown overheard her speaking Spanish with a co-worker, and told her that she was not permitted to speak Spanish in the office. (*Id.*)  Rodriguez also alleges that Anderson-Brown told her that she did not like Mexicans because her nephew had been killed in Mexico. (*Id.*)  While Rodriguez is not of Mexican descent, she interpreted her comment to mean that Anderson-Brown disliked all Latinos.

Rodriguez's relationship with Anderson-Brown did not improve.  Rodriguez thought that Anderson-Brown was a poor manager and reports that she was harassed, degraded, and mistreated by Anderson-Brown, though Rodriguez provided few specifics of mistreatment. (*Id.*)  After ten months of working at CTMSB, Rodriguez decided that she could no longer work with Anderson-Brown and took part-time status. (*Id.* at 11.)  At the time, she reported that the reason she went part-time was a decision to spend more time with her young daughter, but in her complaint, she claims that she went part-time to escape from working with Anderson-Brown. (*Id.*)  Rodriguez claims that she did not bring an EEO complaint against Anderson-Brown because she was afraid that Anderson-Brown would retaliate and ruin her career. (*Id.* at Ex. 12, Rodriguez EEOC complaint, at 95.)  As she was in the process of being moved to part-time, Rodriguez alleges that she was removed from her supervisory role and was given only administrative tasks to perform. (*Id* at Ex. 9, Rodriguez Statement at 11.)

Changing to part-time status allowed Rodriguez to switch divisions within the Census Bureau and stop reporting directly to Anderson-Brown.  In March 1999, Rodriguez began working in the Space, Inventory and Construction Branch (SICB) of the Bureau with Susan Boyer as her supervisor.  For the next three years, Rodriguez reported no problems or harassment.  In 2002, however, she claims that one of her co-workers, Chante Shaw, became

angry with her because Rodriguez's work on the SICB website was better received than Shaw's. (*Id.* at 5.) Rodriguez also alleges that on one occasion, in November 2002, Anderson-Brown walked by her in the corridor and hit her with her arm or shoulder and knocked Rodriguez aside. (*Id.* at Ex. 12, Rodriguez EEOC complaint, at 96.) In her complaint, Rodriguez states that, in retrospect, she should have filed a lawsuit, but again feared retaliation from Anderson-Brown.

In March 2003, Rodriguez moved to the Systems, Applications, and Software Branch (SASB) of the Census Bureau. Rodriguez continued reporting to Susan Boyer, the Branch Chief, though Anderson-Brown was an Assistant Division Chief at the time. Rodriguez reports that Anderson-Brown attempted to put a hold on her transfer to SASB, though it was approved after a couple of months and a call to the union representative. (*Id.*)

In her complaint, Rodriguez claims that she suffered discrimination at the hands of many of her co-workers when beginning her work at SASB. On Rodriguez's first day at SASB, Mary Wright, a co-worker, asked if she was placed in the office as a spy. (*Id.* at 98.) During the course of the next few years, according to Rodriguez, others of her co-workers were rude to her during meetings and in her office. (*Id.* at Ex. 9, Rodriguez Statement at 7.) She claims that, at times, co-workers spoke to her "disrespectfully," and that they had "negative and hostile attitudes" toward her. (*Id.*) In her complaint, Rodriguez notes that, at times, her co-workers would ignore her suggestions on projects, would not work with her on other projects, and were not polite to her. Rodriguez complained that one of her co-workers, Cathy Tang, would come over and talk to Rodriguez several times a day and once gave her a big hug. (*Id.* at Ex. 12, EEOC Complaint, at 99, 101.) On another occasion, Rodriguez felt that a co-worker sat too close to her a meeting and made her feel uncomfortable. (*Id.* at 454.) A co-worker once asked

to see the bar code on her computer and asked if she had the keys to Boyer's office. (*Id.* at 101.)

Other than the events in 1998 concerning Anderson-Brown, none of the other encounters with Rodriguez's co-workers specifically involved race.  Nevertheless, Rodriguez states that she believes that "their behavior against [her] is based on discrimination because [she is] Hispanic." (*Id.* at Ex. 9, Rodriguez Statement at 9.)  She also claims that her co-workers are jealous of another Hispanic in the workplace, and that they treat him in an "immature, unprofessional, and disgusting" manner.  (*Id.* at 9-10.)

To try to remedy the situation, Rodriguez notified an EEO counselor on June 17, 2005, detailing some of the harassment that she felt she faced.  (*Id.* at Ex. 12, Rodriguez EEOC complaint, at 101.)  A month later, Rodriguez contacted the Division Chief of the Security Office regarding the discrimination, and filled out a form detailing some of the actions she considered harassment.  On September 15, 2005, Rodriguez received a copy of her Notice of a Right to file a formal complaint of discrimination.  On September 23, she filed a formal EEO complaint.  In her complaint, as remedies, Rodriguez hoped to move to a different office in ACSD, be promoted to Grade GS-13, and have her co-workers disciplined.  (*Id.*)  On October 12, Rodriguez amended her EEO complaint with four more incidents with her co-workers, and further added that the hostile environment caused her to suffer from fibromyalgia.  On January 24, 2006, the EEO issued a Procedural Dismissal, finding that Rodriguez's complaint was untimely and failed to state a claim.  On March 23, after receiving another Notice of Right to File, Rodriguez filed another EEO complaint alleging that further acts of harassment had occurred.  The EEO dismissed the second complaint finding again that the complaint was untimely and failed to state a claim.

In April 2006, Rodriguez filed this complaint, *pro se*, alleging violations of Title VII, including disparate treatment and hostile work environment.  In its motion to dismiss or, in the alternative, for summary judgment, the defendant argued that Rodriguez did not properly exhaust her administrative remedies and could not make out a prima facie case of hostile work environment because she did not allege that the incidents were directed at her because of her race.  In response, Rodriguez moved to amend her complaint, asserting that the "conduct of Defendant(s) was discriminatory because it was based on race, national origin, and retaliation." (Pl.'s Am. Compl. at 2.)  Additionally, Rodriguez sought to add a pattern or practice discrimination claim against the defendant.  (*Id.*)

### ANALYSIS

I will consider defendant's motion to dismiss or, in the alternative, for summary judgment, to be a motion to dismiss, as it is not necessary to consider matters outside the pleadings.  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  To survive a motion to dismiss,

however, a complaint must "in light of the nature of the action ... sufficiently allege each element

of the cause of action so as to inform the opposing party of the claim and its general basis."

*Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005).  In addition, because the court

is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal

conclusions.  *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting

that the "presence . . . of a few conclusory legal terms does not insulate a complaint from

dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions).

Here, Rodriguez alleges a hostile work environment claim under Title VII.  To prevail on

a hostile work environment claim, a plaintiff must show that: 1) the conduct in question was

unwelcome, 2) the harassment was based on race, 3) the harassment was sufficiently pervasive

or severe to create an abusive working environment, and 4) that some basis exists for imputing

liability to the employer.  *See  Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir.

2001).  Because Rodriguez did not allege that her harassment was based on race, and because her

alleged harassment was not sufficiently pervasive or severe to create an abusive working

environment, defendant's motion will be granted.

While Rodriguez claims that she was discriminated against upon moving to the SASB in

2003 branch of the Census Bureau, there is no indication from plaintiff's allegations that her co-

workers held any animosity toward Rodriguez because of her race or national origin.  Rodriguez

makes no allegation that any of her co-workers made any derogatory comments about her race.

Indeed, none of the alleged harassment suffered since 2003 (e.g. co-workers staring at

Rodriguez, asking her if she was a spy, ignoring her suggestions on projects, chatting with her

6

during work hours, sitting next to her during a meeting, speaking to summer interns near her

workspace) appeared to have anything to do with her race.  Ms. Rodriguez's subjective belief is

not sufficient: a plaintiff must allege a specific reason why she believes she was discriminated

against because of her race or other protected category.  *See Causey v. Balog*, 162 F.3d 795, 801,

802 (4th Cir. 1998).

Rodriguez does specifically allege that her supervisor, Anderson-Brown made racist

comments, including her dislike of Mexicans and Mexico.  Any complaint based on those

comments, however, is time-barred because Rodriguez did not properly exhaust her

administrative remedies with respect to those statements.  Under EEOC regulations, federal

employees are required to contact an EEO counselor within 45 days of an alleged discriminatory

act.  29 C.F.R. § 1614.105(a)(1).  Administrative filing deadlines act as statutes of limitations in

employment discrimination cases and, unless cause is shown to explain why the regulations were

not adhered to, a failure to comply typically warrants dismissal.  *See Nat'l R.R. Passenger Corp.

v. Morgan*, 536 U.S. 101, 113-14 (2002).  Here, Anderson-Brown's alleged statements that she

did not like Mexicans and did not want Rodriguez to speak Spanish occurred in 1998 or 1999.

Rodriguez did not contact an EEO counselor about the events until six or seven years later.

Rodriguez's complaint alludes to the allegations against Anderson-Brown as being

preserved under the continuing violations doctrine.  Under this doctrine, a plaintiff may rely on

incidents occurring before the statute of limitations period if those incidents "can be related to a

timely incident as a 'series of separate but related acts' amounting to a continuing violation."

*Beall v. Abbott Labs.*, 130 F.3d 614, 620-21 (4th Cir. 1997) (quoting *Jenkins v. Home Ins. Co.*,

635 F.2d 310, 312 (4th Cir. 1980) (per curiam)).  For the 1998-1999 acts to be included in

7

Rodriguez's other hostile work environment claims, she would need to link the untimely acts to the same employment practice that produced the timely hostile work environment claims. *Morgan*, 536 U.S. at 122 ("a charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice...").

Here, Anderson-Brown's statements are not properly linked to the other, timely acts of discrimination and harassment alleged by Rodriguez for several reasons. First, Anderson-Brown's alleged harassment occurred several years before the acts alleged against Rodriguez's co-workers. Anderson-Brown allegedly told Rodriguez that she didn't like Mexicans in 1998-1999, and Rodriguez did not begin to suffer the alleged harassment from co-workers until 2003. In the time period between 1999 and 2003, Rodriguez alleges no harassment occurred. Second, Anderson-Brown's harassment occurred while she was supervising Rodriguez in CTMS, while Rodriguez's co-workers allegedly harassed her while she was working in SASB. Although Rodriguez directly worked with Anderson-Brown in CTMS, Anderson-Brown was not Rodriguez's direct supervisor while Rodriguez worked in SASB, and Rodriguez does not allege that she worked on a regular basis with Anderson-Brown in SASB. Third, there is no allegation that Anderson-Brown's statements are related in any way to Rodriguez's co-workers' harassment. Indeed, unlike Anderson-Brown's statement that she did not like Mexicans, none of her co-workers' harassment are alleged to have specifically involved the mention of race. Thus, Anderson-Brown's 1998-1999 statements are not part of the same "unlawful employment practice" alleged against Rodriguez's co-workers, and are time-barred. *See Bryan v. Lucent Technologies, Inc.*, 307 F. Supp. 2d 726, 737, n. 9 (D. Md. 2004) (holding that failure to link the

untimely acts to the same employment practice as the timely acts results in a complaint based on

the earlier acts being time-barred).

Even if Rodriguez did allege that her harassment was based on race, her claim would still

not prevail because the alleged harassment was not sufficiently severe or pervasive to create an

abusive working environment.  While Rodriguez may not have had the easiest time interacting

with her co-workers, employees are not guaranteed a stress-free environment under Title VII.

*Riley v. Technical and Management Serv. Corp., Inc.*, 872 F. Supp. 1454, 1462 (D. Md. 1995).

Here, Rodriguez's alleged harassment is simply not sufficiently severe or pervasive to constitute

a hostile work environment.  *Compare Spriggs*, 242 F.3d at 185-86 (holding that the almost daily

insulting of plaintiff by calling him the "n" word, "monkey" and other racial epithets was

sufficiently severe or pervasive (or both) to constitute a hostile work environment) *with Claude*

*v. Harbor Hospital Center*, 284 F. Supp. 2d 276, 277, n.2 (D. Md. 2003) (finding that harassment

was not sufficiently severe or pervasive where plaintiff made isolated and unrelated comments,

such as questioning whether plaintiff knew any drug dealers, or commenting on the amount of

hardware and accessories on her car).

Lastly, I will deny the motion to amend plaintiff's complaint.  Assuming *arguendo* that

the amended complaint's filing complies with the Local Rules, the amended complaint will

nonetheless be denied as futile because the substance of the amended complaint does not differ

from the initial complaint.  While the plaintiff has added a pattern or practice discrimination

claim in her proposed amended complaint, the description of the underlying acts remains the

same.  As noted above, the "presence ... of a few conclusory legal terms" will not save a

complaint, if the facts alleged do not support the legal conclusions.  While it is clear that a

complaint "need not make a case against a defendant or forecast evidence sufficient to prove an element of a claim," a complaint must "allege facts sufficient to state elements of the claim." *Chao*, 415 F.3d at 349 (internal quotations omitted).  Here, the amended complaint alleges facts that do not "seem to have anything to do with gender, race, or age harassment but merely [tell] a story of some workplace dispute..." *Id.* at 347-48 (quoting, in part, *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).  As such, the motion to amend plaintiff's complaint will be denied, and defendant's motion to dismiss will be granted.

A separate order follows.


___12/29/06_____                          _____/s/_____

Date                                         Catherine C. Blake
                                             United States District Judge